**FILED**
Lucinda B. Rauback, Clerk
United States Bankruptcy Court
Brunswick, Georgia
By cking at 2:01 pm, Jan 17, 2013

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE

SOUTHERN DISTRICT OF GEORGIA
Brunswick Division

| | |
|---|---|
| IN RE: ) | CHAPTER 11 CASE |
| ) | NUMBER <u>12-20564</u> |
| COASTAL REALTY INVESTMENTS, INC. ) | |
| ) | |
| Debtor ) | |
| ) | |
| _____ ) | |
| ) | |
| BANK OF THE OZARKS ) | |
| ) | |
| Objecting Creditor ) | |
| ) | |
| vs. ) | |
| ) | |
| COASTAL REALTY INVESTMENTS, INC. ) | |
| ) | |
| Debtor/ Respondent ) | |

### <u>OPINION AND ORDER OVERRULING IN PART AND SUSTAINING IN PART BANK OF THE OZARKS' OBJECTION TO DISCLOSURE STATEMENT</u>

This matter is before me on Bank of the Ozarks' ("Ozarks") Objection to the Disclosure Statement and Amended Disclosure Statement of Coastal Realty Investments, Inc. ("Debtor") filed on November 8, 2012. A hearing was held on November 15, 2012, after which I took the matter under advisement.

Having considered the various objections, I find that the Amended Disclosure Statement should include a copy of any

AO 72A

agreement(s) personally guaranteeing Debtor's indebtedness to Ozarks as well as a narrative explanation of whether Debtor disputes such agreement(s). The Amended Disclosure Statement should also include an explanation of how Debtor calculates the figures listed in the monthly budget attached to the Amended Disclosure Statement as Exhibit D. To the extent that Ozarks' objection relates to the deficiency of these items, the objection is sustained. To the extent that Ozarks' objection advances grounds for disapproval based on the feasibility of the amended plan of reorganization or the inadequacy of the Amended Disclosure Statement in general, the objection is overruled.

## FINDINGS OF FACT

Debtor is a corporation founded in May 2001 for the purpose of buying and selling real estate. (ECF No. 83; ECF No. 84.) As part of its business, Debtor purchased several properties, one of which was a thirty-two unit condominium complex housing short-term renters in the Brunswick area ("Coastal Condos"). (Id.) When Debtor began renting Coastal Condos, an average of 80-90% of the units were occupied. (Id.) However, in early 2011, half of the Coastal Condos units were vacated within a timespan of three weeks, and the occupancy rate dropped by around 50%. (Id.) As a

AO 72A

result, on May 21, 2012, Debtor filed a petition for chapter 11 bankruptcy relief. (ECF No. 1.).

On July 20, 2012, I determined that this case was a single asset real estate case with the Coastal Condos property comprising the only asset. (ECF No. 43.) Ozarks is a creditor whose $1,148,386.22 claim is secured by the Coastal Condos property. (ECF No. 84 Article II ¶ 4.) In addition to Ozarks, Debtor has two other secured creditors, First Glynn Bank, a division of First Chatham Bank ("First Chatham Bank"), and Certus Bank, N.A.,[1] and six unsecured creditors. (Cl. Nos. 1-1, 2-1, 3-1, 4-1, 5-1, 6-1, 7-1; ECF No. 83 Ex. B; ECF No. 84 Article II.)

On August 15, 2012, Debtor filed a Chapter 11 plan of reorganization and disclosure statement (ECF No. 57; ECF No. 58), and shortly thereafter, a hearing on the disclosure statement was set for October 11, 2012 (ECF No. 60). Before the hearing date, both the United States Trustee and Ozarks filed objections to the disclosure statement (ECF No. 80; ECF No. 81), and in response to those objections, on October 9, 2012, Debtor filed an amended chapter 11 plan ("Amended Plan") and an amended disclosure statement ("Amended Disclosure Statement")(ECF No. 83; ECF No. 84).

---

[1] Certus Bank N.A. is both a secured and unsecured creditor. (ECF No. 82 Article II ¶ 5.) It is secured by real property whose value is $210,000.00 and unsecured in the remaining debt amount of $54,422.33. (Id.)

3

At the October hearing, I continued the matter until November 15, 2012 and ordered that any objections to the Amended Disclosure Statement be filed by November 8, 2012. (ECF No. 85; ECF No. 86.) On that date, Ozarks filed another objection to both the Disclosure Statement and the Amended Disclosure Statement ("Amended Objection"). (ECF No. 92.)

At the November hearing, the United States Trustee withdrew his objection to the disclosure statement, but Ozarks did not. (ECF No. 93.) Instead, Ozarks contended that the Disclosure Statement and the Amended Disclosure Statement ("Disclosure Statements")[2] lacked sufficient information to allow creditors to make informed decisions about the feasibility of the Amended Plan,[3] and urged me to consider each ground set forth in the Amended Objection. (Id.)

## CONCLUSIONS OF LAW

Before considering the Amended Objection, I first note that "[t]he purpose of the disclosure statement is to provide

---

[2] In the Amended Objection, Ozarks explains that the term "Disclosure Statement" refers collectively to the original disclosure statement and to the Amended Disclosure Statement. (ECF No. 92 page 2 fn 1.) However, as the Amended Objection was filed after the Amended Disclosure Statement, I will address the objections only with regard to the Amended Disclosure Statement.

[3] While Ozarks does not differentiate between the original plan of reorganization and the Amended Plan, as the Amended Objection was filed after the Amended Plan, the Court makes the assumption that Ozarks' references in the Amended Objection to the "plan" are to the Amended Plan.

4

AO 72A

sufficient information to enable a reasonable and typical investor to make an informed judgment about the plan." In re Ligdon, 50 B.R. 127, 130 (Bankr. M.D. Tenn. 1985)(citing S. Rep. No. 95-989, at 5907 (1978)). The goal "is not to assure acceptance or rejection of the plan, but rather is to provide enough information to interested persons so they may make an informed choice between two alternatives." In re Stanley Hotel, Inc., 13 B.R. 926, 929-30 (Bankr. D. Colo. 1981).

Therefore, the fact that a plan of reorganization is not feasible does not itself bar a disclosure statement's approval. See generally In re El Comandante Mgmt. Co., LLC, 359 B.R. 410 (Bankr. D.P.R. 2006). Instead, as long as the disclosure statement adequately provides creditors with enough information to assess the plan, the disclosure statement has fulfilled its purpose. Judgments about whether the plan is feasible based on those assessments are issues reserved for plan confirmation.

Having set forth that purpose, I now turn to Ozarks' Amended Objection. In it, Ozarks advances five categorical objections to the Disclosure Statements: (1)Debtor overvalues the Coastal Condos property; (2) Debtor underrepresents the amount of debt owed to Ozarks; (3) Debtor's proposed terms of repayment to Ozarks are unreasonable given commercially acceptable standards within the banking industry; (4) the Disclosure Statements

violate this Court's order dealing with the use of cash collateral; and (5) the Disclosure Statements lack adequate information to enable creditors to make informed judgments about whether to vote for the Amended Plan.

After the filing of the Amended Disclosure Statement and the hearing on November 15, 2012, objections under the first category have been resolved, objections under the second category have either been resolved or relate to the feasibility of the Amended Plan, and objections under the third and fourth categories relate to the feasibility of the Amended Plan. The only remaining substantive objections fall under the fifth category. Each category is addressed below.

I. **Category I: Debtor undervalues property (paragraph 6).**

In paragraph 6, Ozarks objects to the Disclosure Statements based on the Debtor's overvaluing the Coastal Condos property. At the hearing on November 15, 2012, property appraiser Richard Freeman testified that using two methods of appraisal, he considered Coastal Condos to be worth $1,375,000.00 if furnished and $1,345,000.00 if unfurnished. (ECF No. 93.) Based on the evidence presented, at the conclusion of his testimony, I set the value of the property at $1,375,000.00. (Id.) As that figure matches the figure listed in the Debtor's asset valuation

6

attached to the Amended Disclosure Statement as Exhibit A, Ozarks' valuation objection has been resolved.

### II. Category II: Debtor underrepresents the amount of debt owed by Debtor to Ozarks (paragraphs 7, 21, 22, & 23).

Ozarks next argues that Debtor underrepresents the amount of its indebtedness to Ozarks. (ECF No. 92 ¶¶ 7, 21, 22, 23.) In paragraph 21, Ozarks states that Debtor lists $1,133,167.25 as the amount of its debt when the proper amount of the debt, as reflected by Ozarks' proof of claim, is $1,148,386.22. While it is true that in Debtor's original disclosure statement, Debtor listed the amount of its debt to Ozarks as $1,133,167.25 (ECF No. 58 Exs. A & B), in the Amended Disclosure Statement, Debtor clearly changes that amount to $1,148,386.22 (ECF No. 83 Exs. A & B). Therefore, the objection in paragraph 21 has been resolved.

Similarly, paragraph 23 of the Amended Objection states that the Disclosure Statements provide for monthly payments to Ozarks based on an incorrect statement of the debt actually owed. However, attached to the Amended Disclosure Statement as Exhibit G is a loan amortization calculator which establishes monthly payment amounts based on a debt of $1,148,386.22. (ECF No. 83 Ex. G.) While the loan amortization calculator attached to the original disclosure statement based the payment amounts on an indebtedness of $1,133,167.25 (ECF No. 58 Ex. G), in the Amended

7

Disclosure Statement, the payment amounts have been changed to reflect the $1,148,386.22 figure; thus, the objection in paragraph 23 has also been resolved.

The next paragraph objecting to the Disclosure Statements on the ground of undervaluation of the debt is paragraph 22. In this paragraph, Ozarks claims that because the fair market value of the property securing its debt is greater than the amount of the secured claim, under 11 U.S.C. § 506(b), it is entitled to additional postpetition interest as part of its secured claim. Ozarks reasons that since the Disclosure Statements both fail to account for that interest and contain no buffer of revenue that would allow that interest to be paid, the Disclosure Statements should not be approved.

Ozarks, whose debt is secured by Coastal Condos, has a claim against the Debtor in the amount of $1,148,386.22. (Cl. # 6-1.) Since I have established the value of the Coastal Condos property at $1,375,000, Ozarks is oversecured in the amount of $226,613.78.

As Ozarks correctly indicates, § 506(b) establishes that an oversecured creditor is entitled to postpetition interest in the amount of the contract or other applicable non-bankruptcy law. 11 U.S.C. § 506(b); see also In re Dent, 137 B.R. 78, 81 (Bankr. S.D. Ga. 1992). However, whether the Amended Plan pays Ozarks

8

postpetition interest relates to whether the Amended Plan itself is confirmable.

In paragraph 22, Ozarks is concerned that it will not receive the full value of its claim including the § 506(b) postpetition interest; thus, paragraph 22 is an objection to the substance of the Amended Plan rather than to the adequacy of the Disclosure Statements. The Amended Plan, as opposed to the Amended Disclosure Statement, is the instrument that sets forth the treatment of each creditor and thus sets forth the amount Ozarks will be paid. The Amended Disclosure Statement must only explain the consequences of accepting the Amended Plan. Here, there is an adequate explanation of the Amended Plan; Ozarks just does not like that explanation. Therefore, paragraph 22 is an objection to the Amended Plan and should be reserved as an objection to plan confirmation.

Finally, as paragraph 7 merely summarizes the arguments in the paragraphs discussed above, it has either been resolved or is improper as it relates to the confirmability of the Amended Plan.

### III. Category 3: Debtor's proposed terms of repayment to Ozarks are unreasonable given commercially acceptable standards within the banking industry (paragraphs 8 & 24).

Next, Ozarks objects to the Disclosure Statements on the ground that the Debtor's proposed terms of repayment to Ozarks

AO 72A

are unreasonable by commercial standards. (ECF No. 92 ¶¶ 8, 24.) These objections also relate to the terms of the Amended Plan.

In the Amended Disclosure Statement, Debtor has indicated the specific way in which it plans to repay its debt to Ozarks both in the event that the Coastal Condos property sells or does not sell within a year of plan confirmation. (ECF No. 83 Ex. C.) Thus, Debtor has adequately disclosed to all parties how this creditor is to be treated under the Amended Plan. Furthermore, the fact that Ozarks objects to this treatment shows that the essence of the treatment has been adequately disclosed. Whether or not the terms of repayment meet the confirmation requirements of 11 U.S.C. § 1129 is an issue for confirmation.

IV. **Category 4: The Disclosure Statements violate this Court's order dealing with the use of cash collateral (paragraph 30).**

Ozarks objects to the Disclosure Statements on the ground that they violate my prior order permitting the limited use of Ozarks' cash collateral. (ECF No. 92 ¶ 30; see also ECF No. 52 & ECF No. 73.) This objection pertains to the confirmability of the Amended Plan.

The Bankruptcy Code states that a court shall confirm a plan only if "[t]he plan has been proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1129(a)(3). In paragraph 30, Ozarks is objecting to the Amended Plan on the ground that it

10

violates the law by violating a court order. The Amended Disclosure Statement adequately explains how the Amended Plan treats the cash collateral, but in paragraph 30, Ozarks objects to the terms of that treatment. Therefore, the objection in paragraph 30 is proper for plan confirmation and not proper as an objection to the Amended Disclosure Statement.

V. **Category 5: The Disclosure Statements lack adequate information to enable creditors to make informed judgments about the Amended Plan (paragraphs 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 25, 26, 27, 28, & 29).**

The remaining 17 objections relate to whether the Disclosure Statements provide creditors with adequate information to assess the Amended Plan. These objections can be further divided into general assertions of what constitutes adequate information and specifically what factual information is lacking in the Disclosure Statements so as to make them inadequate.

First, generally in a chapter 11 case, a debtor cannot solicit creditors to accept a plan of reorganization unless and until the court approves a disclosure statement.[4] 11 U.S.C. § 1125(b). For a court to approve, the disclosure statement must give creditors "adequate information, which the Bankruptcy Code defines as:

---

[4] In a small business case, not applicable here, "the court may determine that the plan itself provides adequate information and that a separate disclosure statement is not necessary." 11 U.S.C. § 1125(f)(1).

11

> "[I]nformation of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan . . . .

11 U.S.C. § 1125(a)(1); see also In re New Power, 438 F.3d 1113, 1118 (11th Cir. 2006). The statute goes on to state that "in determining whether a disclosure statement provides adequate information, the court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information." Id.

While the statutory language sets out the general parameters of adequacy, ultimately, a court must decide when a disclosure statement meets the statutory standard in light of the particular case and surrounding circumstances. See In re Howell, No. 09-91538, 2011 WL 1332176, at *1 (Bankr. N.D. Ga. Jan. 21, 2011)(citing In re Aspen Limousine Service, Inc., 193 B.R. 325, 334 (D. Colo. 1996))("Beyond the statutory guidelines described in § 1125(a)(1), the decision to approve or reject a disclosure statement is within the discretion of the bankruptcy court. . . . [T]he court should evaluate the information in light of the

12

particular circumstances of the case."); see also In re Copy Crafters Quickprint, Inc., 92 B.R. 973, 979 (Bankr. N.D.N.Y. 1988)(citing H.R. Rep. No. 95-595, at 408-09 (1978))("What constitutes adequate information is to be determined on a case-specific basis under a flexible standard that can promote the policy of Chapter 11 towards fair settlement through a negotiation process between informed, interested parties.") In determining whether a disclosure statement provides adequate information in a particular case, courts have considered several factors including:

> (1) the events which led to the filing of a bankruptcy petition; (2) a description of the available assets and their value; (3) the anticipated future of the company; (4) the source of information stated in the disclosure statement; (5) a disclaimer; (6) the present condition of the debtor while in Chapter 11; (7) the scheduled claims; (8) the estimated return to creditors under a Chapter 7 liquidation; (9) the accounting method utilized to produce financial information and the name of the accountants responsible for such information; (10) the future management of the debtor; (11) the Chapter 11 plan or a summary thereof; (12) the estimated administrative expenses, including attorneys' and accountants' fees; (13) the collectibility of accounts receivable; (14) financial information, data, valuations or projections relevant to the creditors' decision to accept or reject the Chapter 11 plan; (15) information relevant to the risks posed to creditors under the plan; (16) the actual or projected realizable value from recovery of preferential or otherwise voidable transfers; (17) litigation likely to arise in a nonbankruptcy context; (18) tax attributes of the debtor; and (19) the relationship of the debtor with affiliates.

In re Metrocraft Publ'g Servs., Inc., 39 B.R. 567, 568 (Bankr. N.D. Ga. 1984)(citing In re A.C. Williams Co., 25 B.R. 173 (Bankr. N.D. Ohio 1982), In re William F. Gable Co., 10 B.R. 248 (Bankr. N.D. W. Va. 1981), In re Adana Mortg. Bankers, Inc., 14 B.R. 29 (Bankr. N.D. Ga. 1981)). Courts have also indicated that while "[c]onclusory allegations or opinions without supporting facts are generally not acceptable," In re Ligon, 50 B.R. at 130 (citing In re Egan, 33 B.R. 672 (Bankr. N.D. Ill. 1983); In re E. Redley Corp., 16 B.R. 429 (Bankr. E.D. Pa. 1982)), "no plan proponent is expected to be able to predict the future with unerring accuracy," In re Stanley Hotel, Inc., 13 B.R. at 929.

In paragraphs 10, 11, 12, 13, and 16, Ozarks reiterates these concepts, and contends that the Disclosure Statements in this case are wholly inadequate. However, in light of the particular circumstances in this case, I disagree.

The present case is simple. Debtor has only eight creditors. Debtor plans to sell its single real estate asset within a year of confirmation to pay those creditors. (ECF No. 84 Article II ¶ 4(b), ECF No. 84 Article IV ¶ 1.) Therefore, this case warrants a simple disclosure statement. The Amended Disclosure Statement lists the assets and liabilities of the Debtor and explains how each creditor will be treated under the Amended Plan; thus, it is

14

generally adequate under these circumstances. (ECF No. 83 Exs. A, B, & C.)

However, the fact that the Amended Disclosure Statement is generally adequate does not mean that there are not several specific inadequacies contained therein. The first inadequacy is its failure to disclose the guarantors of the Ozarks debt. To make an informed judgment about the Amended Plan, the voting creditors should know both the extent of the debts owed and the sources of debt satisfaction. Here, the Amended Disclosure Statement contains neither a textual reference to guarantors of the Ozarks debt nor a copy of any such guarantee agreement[5] ("Guarantee Agreement") attached thereto as an exhibit.

At the hearing, counsel for the Debtor indicated that Ozarks should not worry about being fully paid by the Amended Plan because all five shareholders had given personal guarantees for the debt. (ECF No. 93.) She also indicated that she thought she had attached a copy of the Guarantee Agreement to the Amended Disclosure Statement. (Id.) However, the Amended Disclosure Statement itself contains neither a copy of the Guarantee Agreement nor an explanation of whether the Debtor disputes such agreement. While Ozarks attached a copy of the Guarantee

---

[5] Exhibit F to the Amended Disclosure Statement contains reference to a guarantee agreement for the debt to First Chatham Bank, but there is no similar exhibit referencing a guarantee agreement for the debt to Ozarks.

15

Agreement to its proof of claim (Cl. No. 6-1), that attachment is not sufficient. The Amended Disclosure Statement itself should have set forth this information.

The next inadequacy in the Amended Disclosure Statement is the lack of factual support or explanation for the Debtor's monthly budget ("Budget") set forth in Exhibit D. (ECF No. 92 ¶¶ 9, 14, 15, 17, 18, 20, 25-28.) In this case, the Amended Plan proposes to sell the Coastal Condos property within a year and in doing so, pay all creditors in full. (ECF No. 84 Article II ¶ 4(b), ECF No. 84 Article IV ¶ 1.) However, until the property is sold, Debtor proposes to operate Coastal Condos and to pay all of its interim expenses[6] through the income earned from that operation. (ECF 84; ECF No. 83, text explaining Ex. D.) Therefore, the Budget is important because it shows creditors how Debtor will fulfill the Amended Plan either until Coastal Condos is sold or until the year expires.

However, as Ozarks indicates in its objections, the Budget is a list of unsupported numbers. (ECF No. 92 ¶¶ 9, 14, 15, 17, 18, 20, 25-28.) It includes neither a data breakdown nor a narrative showing how Debtor calculates its projected revenue and

---

[6] The U.S. Trustee's fee, the monthly payment to First Glynn Bank as set forth in the terms of the note and contract between the parties, the interest owed to Ozarks, and the interest owed to Certus Bank, N.A. comprise part of those expenses. (ECF No. 83 Ex. D.)

16

expenses, including the monthly occupancy rate for the Coastal Condos property (Id. ¶¶ 17, 18), the amount of accounting fees (Id. ¶ 27), the amount of repair costs (Id. ¶ 28), and the management services fee (Id. ¶¶ 25, 26).

This deficiency is particularly troubling because the Budget lists the amount of monthly income and the amount of monthly expenses as the exact same figure. Since there is nowhere in the Amended Plan or Amended Disclosure Statement where Debtor accounts for a contingency where the monthly expenses are actually greater than the monthly income ("Contingency"), in the event that such Contingency occurs before Coastal Condos is sold, there is the possibility the Amended Plan will fail.

At the hearing, counsel for the Debtor indicated that because Ozarks had been given access to the Debtor's books and had taken the deposition of Mr. Coty, the registered agent of the Debtor (ECF No. 1; see also Adversary 12-02030, ECF No. 1 Ex. C ¶ 3), Ozarks should have sufficient information to make an informed decision about the Amended Plan based on the numbers listed in the Budget. (ECF No. 93.) However, Ozarks' opportunity to acquire relevant information from the Debtor is not a substitute for a factual explanation in the Amended Disclosure Statement. The Amended Disclosure Statement itself must give all creditors an explanation regarding how the Debtor calculates the income and

17

expense figures so that all creditors, including Ozarks, have the information necessary to make informed judgments about the Amended Plan.

As to the occupancy rate, the Amended Disclosure Statement must explain in narrative form whether the 80% projection is based on a historical figure, an average, or some other calculation. For the expenses, including the accounting fees and maintenance costs, the Debtor must produce a summary of how those fees are estimated. Finally, for the management costs, the Debtor must explain who the proposed manager or management company will be and the basis for the 10% rate.

Debtor's explanation does not have to convince creditors to vote for the Amended Plan. Persuasion is not the purpose of a disclosure statement. Thus, paragraph 29 of the Amended Objection, in which Ozarks argues that the Disclosure Statements are deficient because they do not provide any buffer for unforeseen expenses, fails because it is actually an objection to the fact that the Amended Plan does not provide such a buffer. (See ECF No. 92 ¶ 29.) However, the Amended Disclosure Statement must clarify how Debtor came up with the figures listed in the Budget so that creditors will have adequate information to decide whether to vote for the Amended Plan.

Finally, I find that the Amended Disclosure Statement provides adequate information to creditors about the circumstances which led the Debtor to file for bankruptcy. (See ECF No. 92 ¶ 19.) The Amended Disclosure Statement explains that half of the Coastal Condos units were vacated when customers lost their jobs with several local businesses and, while it does not explicitly state that such events led to the filing of bankruptcy, such inference can be drawn from the language as it stands. As this is a simple case, no further explanation is necessary.

### ORDER

Accordingly, Bank of the Ozarks' Objection to Disclosure Statement is **ORDERED OVERRULED** in part and **ORDERED SUSTAINED** in part; and it is

**FURTHER ORDERED** that Debtor amend its Amended Disclosure Statement as follows:

1. Debtor shall provide a copy of the guarantee agreement(s) for the Bank of the Ozarks debt, and shall provide a narrative explanation of whether it disputes such agreement(s);
2. Debtor shall provide a narrative explanation of how the monthly income listed in Exhibit D is calculated. Such explanation shall include whether such figure is

19

calculated based on an average, on historical data, or by some other means;

3. Debtor shall provide a narrative explanation of the management fee listed as an expense in Exhibit D. Such explanation shall include the basis for such fee, the proposed manager or management company, and the basis for the listed rate. If the management fee is based on a contingency, such explanation shall disclose that information;

4. Debtor shall provide a narrative explanation of how each expense listed in Exhibit D is calculated. Such explanation shall include whether the figure is calculated based on an average, on historical data, or by some other means, and shall further provide some supporting data for those calculations; and

5. A Second Amended Disclosure Statement addressing the shortcomings referenced above must be filed within 30 days of the date of this order.

JOHN S. DALIS
United States Bankruptcy Judge

Dated at Brunswick, Georgia,
this 17 day of January, 2013.