IN THE UNITED STATES BANKRUPTCY COURT
FOR THE
SOUTHERN DISTRICT OF GEORGIA
Brunswick Division

IN RE:                                )        CHAPTER 11 CASE
                                      )        NUMBER <u>12-20564</u>
COASTAL REALTY INVESTMENTS, INC. )
                                      )
        Debtor                        )
                                      )        **FILED**
_____     )        **Lucinda B. Rauback, Clerk**
                                      )        **United States Bankruptcy Court**
                                      )        **Brunswick, Georgia**
BANK OF THE OZARKS                    )        *By cking at 4:30 pm, Mar 10, 2014*
                                      )
        Creditor/Movant               )
                                      )
v.                                    )
                                      )
                                      )
COASTAL REALTY INVESTMENTS, INC. )
                                      )
        Debtor/Respondent             )
_____     )

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART BANK OF THE OZARKS' APPLICATION FOR EXPENSES AUTHORIZED BY 11 U.S.C. § 506(b)

This matter comes before me on Bank of the Ozarks' ("Ozarks") application for interest, attorneys' fees, other fees, costs and charges authorized by 11 U.S.C. § 506(b) ("Application"). (ECF Nos. 169, 173.)[1]

Coastal Realty Investments, Inc. ("Debtor") is a corporation founded in May 2001 for the purpose of buying and selling real estate. (Second Am. Discl. Statement, ECF No. 109, at 1.) As part of its business, over the years the Debtor purchased several properties, one of which was a thirty-two-unit condominium complex for short-term renters in the Brunswick, Georgia, area ("Coastal Condos"). (Id. at 2.) When the Debtor

_____

[1] References to the chapter 11 docket, case number 12-20564, appear in the following format: "(ECF No.___.)"

began leasing out Coastal Condos, an average of 80-90% of the units were occupied. (Id.) However, in early 2011, half of the Coastal Condos units were vacated within a span of three weeks. The occupancy rate dropped by half. (Id.) Subsequently, upon suit being filed by Ozarks claiming the Debtor and several of its individual guarantors had defaulted under note obligations to Ozarks, the Debtor filed a petition for chapter 11 bankruptcy relief on May 21, 2012. (ECF No. 1.)

Ozarks is the primary secured creditor in the Debtor's single asset real estate chapter 11 case. (See ECF No. 43.) As of August 29, 2013, Ozarks' claim of $1,148,386.22[2] is secured by Coastal Condos (Cl. # 6-1), which I have determined to be worth $1,375,000.00. (Op. and Order Overruling in Part and Sustaining in Part Bank of the Ozarks' Obj. to Discl. Statement, ECF No. 100.) Therefore, Ozarks is oversecured in the amount of $226,613.78.

In its Application, Ozarks seeks to recover $87,873.11[3] in postpetition interest at the contract rate as well as attorneys' fees contractually liquidated at fifteen percent of the principal and interest owing—an amount Ozarks values at $178,768.93. (ECF Nos. 169, 173.) The Debtor's response contested: 1) the applicable accrual method of the contract interest rate; 2) the allowance of attorneys' fee pursuant to

---

[2]

| | |
|---|---|
| Principal | $ 1,048,883.32 |
| Prepetition Interest | $    55,036.41 |
| Late Fees | $    10,934.50 |
| Reimbursement for Property Taxes | $    29,231.99 |
| Appraisal Fees | $     4,300.00 |
| Total Secured Claim | $ 1,148,386.22 |

[3] As of August, 29 2013.

O.C.G.A. § 13-1-11 and 11 U.S.C. § 502(b)(1); and 3) the reasonableness of the attorneys' fees under 11 U.S.C. § 506(b). (ECF No. 171.)

At a hearing, both parties produced witness testimony regarding the appropriate accrual method on the note. (ECF No. 180.) The Debtor's witness could not recall which method applied. Ozarks' witness testified that interest was accruing at a $189.38 per day, and supported her testimony with the business records of the bank. (Aff. of Amanda Jones, Ex. A of ECF No. 169, at 3.) Accordingly, I found that Ozarks is entitled to postpetition interest to the extent it remains oversecured. Under § 506(b), Ozarks allowed secured claim will continue to increase by $189.38 per day until the Debtor's equity in Coastal Condos has been consumed.

In addition, Ozarks presented expert testimony to support the reasonableness of the fees requested in its Application. The Debtor cross-examined Ozarks' expert, but did not provide contradictory testimony. At the conclusion of the hearing, I took the attorneys' fees issue under advisement. After reviewing the facts of the case, I find that Ozarks is entitled to $178,768.93 in attorneys' fees. However, the attorneys' fees must be bifurcated pursuant to § 506(b). Only actual and reasonable fees are secured. The balance is a general unsecured claim. Accordingly, Ozarks is entitled to $102,485.70 as an addition to its allowed secured claim for attorneys' fees and an unsecured claim of $76,382.23.

## FINDINGS OF FACT

### The Loan Documents

Ozarks' claim to attorneys' fees derives from a series of five loan documents connected to the financing secured by Coastal Condos ("Loan Documents"). First, on April 15, 2008, the Debtor executed a Promissory Note in favor of Ozarks' predecessor in interest, Oglethorpe Bank, for a line of credit in the principal amount of $1,133,167.25 ("Promissory Note") for the purpose of refinancing a loan on Coastal Condos. (Prom. Note, Ex. A of ECF No. 40, at 44.) Regarding attorneys' fees, the Promissory Note provides:

> I agree to pay all costs of collection, replevin or any other similar type of cost if I am in default. In addition, if you hire an attorney to collect this note, **I also agree to pay attorney's fees of 15 percent of the principal and interest then owed, plus court costs** (except where prohibited by law). To the extent permitted by the United States Bankruptcy Code, **I also agree to pay the reasonable attorney's fees and costs you incur to collect this debt as awarded by any court exercising jurisdiction under the Bankruptcy Code.**

(Id.) (emphasis added).

Second, to secure the funds extended under the Promissory Note, the Debtor executed a Commercial Security Agreement ("Security Agreement") on April 15, 2008, which conveyed a first deed to secure debt and security interest in Coastal Condos to Oglethorpe Bank. (ECF No. 169, ¶ 5.) The Security Agreement provided that the Secured Party's reasonable attorneys' fees would be compensated out of proceeds from any sale of the collateral:

> If Secured Party repossesses the Property or enforces the obligations of an account debtor, Secured Party may keep or dispose of the Property as provided by law. **Secured Party will apply the proceeds of any collection or disposition first to Secured Party's expenses of enforcement, which includes**

AO 72A
(Rev. 8/82)

**reasonable attorney's fees and legal expenses to the extent not prohibited by law, and then to Secured Debts.**

(Sec. Agree., Ex. A of ECF No. 40, at 51) (emphasis added).

Third, the Debtor also executed a "Real Estate Deed to Secure Debt with Future Advance Clause" ("Security Deed") for Coastal Condos, which was recorded with the Clerk of the Superior Court of Glynn County on April 16, 2008.[4] The Security Deed pledged a first priority security interest in Coastal Condos as collateral for the funds extended under the Promissory Note. (Sec. Deed, Ex. A of ECF No. 40, at 53.) By its terms, the security interest secured all "[d]ebt incurred under the terms of all promissory note(s), contract(s), guaranty(ies) or other evidence of debt described [herein] and all their extension, renewals, modifications or substitutions." (Ex. A of ECF No. 40, at 54.) Like the Promissory Note, the Security Deed liquidated the amount of attorneys' fees due on default at fifteen percent of principal and interest owed:

> 18. EXPENSES; ADVANCES ON COVENANTS; ATTORNEYS' FEES; COLLECTION COSTS. Except when prohibited by law, Grantor agrees to pay all of Lender's expenses if Grantor breaches any covenant in this Security Instrument. . . . Grantor agrees to pay all costs and expenses incurred by Lender in collecting, enforcing, or protecting Lender's rights and remedies under this Security Instrument. This amount may include, but is not limited to attorneys' fees, court costs, and other legal expenses. **Where the Secured Debt is collected by or through an attorney after maturity, Grantor agrees to pay 15 percent of the principal and interest owing as attorneys' fees.**

(Id. at 56) (emphasis added).

Fourth, the Debtor executed an Assignment of Leases and Rents which was recorded with the Clerk of the Superior Court of Glynn

---

[4] Deed Book 2420, page 83-92.

County on April 16, 2008.[5] (Assign. of Leases and Rents, Ex. A of ECF No. 40, at 62.) The Assignment of Leases and Rents irrevocably assigned to Ozarks all rents and profits arising from, pertaining to, or collected from the occupancy or use of Coastal Condos. (Id.) The Assignment of Leases and Rents permitted the Debtor to collect, receive, enjoy, and use the rents and profits generated from Coastal Condos so long as the Debtor was not in default. (Id.) Upon default, however, any rents and profits received by the Debtor from the occupancy or use of the Property were required to be held in trust for Ozarks' benefit. Like the Promissory Note and Security Deed, the Assignment of Leases and Rents provides for liquidated attorneys' fees of fifteen percent of the principal and interest owed:

> 13. COLLECTION EXPENSES AND ATTORNEYS' FEES. To the extent permitted by law, Assignor agrees to pay all expenses of collection, enforcement or protection of Lender's rights and remedies under the assignment. Expenses include, but are not limited to, reasonable attorneys' fees, court costs and other legal expenses. **Where the Secured Debt is collected by or through an attorney after maturity, Assignor agrees to pay 15 percent of the principal and interest owing as attorneys' fees. These expenses are due and payable immediately.** These expenses will bear interest from the date of payment until paid in full at the contract interest rate then in effect for the loan. **To the extent permitted by the United States Bankruptcy Code, Assignor agrees to pay the reasonable attorneys' fees Lender incurs to collect the Assignment as awarded by any court exercising jurisdiction under the Bankruptcy Code.**

(Id. at 13) (emphasis added).

Finally, the Debtor's principals each executed a Guaranty Agreement absolutely, unconditionally, individually, and personally guaranteeing

---

[5] Deed Book 2420, page 95-100.

AO 72A

(Rev. 8/82)

the payment and performance of all of the notes, debts, and obligations of the Debtor to Oglethorpe Bank. (Guaranty, Ex. A of ECF No. 40, at 47.) The Guaranties specifically include, but are not limited to, the Debtor's obligations under the Promissory Note dated April 15, 2008. (Id.) These Guaranty Agreements were also referenced in the Promissory Note and the Commercial Security Agreement. (Ex. A of ECF No. 40, at 47, 51.)

By Purchase and Assumption Agreement dated January 14, 2011, between Ozarks and the Federal Deposit Insurance Corporation as Receiver of Oglethorpe Bank, Ozarks purchased and received all rights, title, and interest provided for in the Loan Documents. (See ECF No. 40, at 9.)

On April 25, 2011, the Debtor and Ozarks executed a Commercial Debt Modification Agreement ("Modification Agreement"), which established the principal due on the Promissory Note at $1,062,973.78. (Comm. Debt. Mod. Agree., Ex. A of ECF No. 40, at 71.) The Modification Agreement changed the Debtor's monthly payments and extended the maturity date of the Promissory Note from March 15, 2011, to March 15, 2012. (Id.) At the same time, the Debtor's principals reaffirmed their absolute and unconditional personal guaranties of the Debtor's obligations to Ozarks.

Most importantly, the Modification Agreement further provided that it did not modify the terms of the Commercial Security Agreement, Security Deed, or Assignment of Leases and Rents executed by the Debtor. Indeed, the Modification Agreement expressly provided that all collateral and terms of security under the Promissory Note, Commercial Security Agreement, Real Estate Deed to Secure Debt, and Assignment of Leases and Rents remained in full force and effect. (See id.)

AO 72A
(Rev. 8/82)

### Pre-Bankruptcy Default

According to the terms of the Modification Agreement, the Debtor was obligated to make monthly payments of $8,571.84 beginning on May 15, 2011, and continuing until March 15, 2012. (Ex. A of ECF No. 40, at 71.) On July 15, 2011, the Debtor defaulted by failing to make its periodic payments when due. (ECF No. 171, ¶ 16.)

In a letter dated December 21, 2011, Ozarks gave the Debtor notice that it was accelerating the amount due on the Promissory Note and demanded payment of the principal and interest no later than ten days from receipt of the demand:

> By this letter, Ozarks hereby provides written notice of Coastal's default. Ozarks further accelerates the balance due under the Promissory Note as of the date of this letter, that is, $1,085,486.61 and demands payment pursuant to O.C.G.A. § 13-1-11 and O.C.G.A. § 13-6-11. In the event payment in full is not received within ten (10) days of receipt of this letter, Ozarks will seek to recover all attorneys' fees incurred in the collection of this debt as provided in the loan documents.

(Dec. 21 Demand Letter, Ex. A of ECF No. 40, at 74-75.)

The Debtor denies receiving the demand letter. (ECF No. 171, ¶ 17.) However, Ozarks submitted copies of the certified mail receipt for both the Debtor's principals and the Debtor itself. (Ex. A of ECF No. 40, at 77-81.) The Debtor claims to have made some payments in the months between its default and bankruptcy filing, but admits that it did not pay the accelerated amount of the Promissory Note as demanded. (ECF No. 171, ¶ 18.)

On February 15, 2012, Ozarks filed suit in the Superior Court of Glynn County, Georgia, ("Superior Court Action") in order to collect on

the Promissory Note.[6] The suit asserts claims against the Debtor and its principals/guarantors for: (1) Breach of Promissory Note; (2) Breach of Contract; (3) Breach of Fiduciary Duty; (4) Theft by Conversion; (5) Claim for Money Had and Received; (6) Declaratory Judgment; and (7) Demand for Constructive Trust and/or Appointment of Receiver. (ECF No. 40, at 3.) A hearing on Ozarks' request for Demand for Constructive Trust and/or Appointment of Receiver was scheduled for May 29, 2012. (Id.) In response, the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code on May 21, 2012.

## Postpetition Proceedings

Ozarks is currently engaged in two separate legal proceedings related to the recovery of the debts owed by the Debtor and its guarantors: (1) the current bankruptcy case and (2) the Superior Court Action. (See Ex. B of ECF No. 169, ¶ 8.) In addition to the ongoing proceedings, Ozarks has defended its right to collect from the Debtor's guarantors in an adversary proceeding[7] related to the Debtor's bankruptcy case and an appeal from the Superior Court Judgment[8] entered in favor of Ozarks. (See Ex. B of ECF 169, ¶¶ 8, 14.)

When the Debtor filed bankruptcy, the automatic stay went into effect and prevented Ozarks from pursuing a judgment against the Debtor. (A.P.

---

[6] Bank of the Ozarks v. Coastal Realty Investments, Inc., Michael G. McDonald, Daniel R. Coty, Sr., Stephen W. McDonald, and Daniel R. Coty, Jr., Civil Action No. CE12-00264-063.

[7] References to the docket of this adversary proceeding, case number 12-02030, appear in the following format: "(A.P. ECF No.___.)"

[8] (Ex. A to A.P. ECF No. 6, at 4.)

ECF No. 1, ¶ 11.) However, the stay affected only Ozarks' collection efforts against the Debtor; it did not stay action against the Debtor's guarantors. (Ex. D of A.P. ECF No. 1.) On August 8, 2012, an order was entered in the State Court Action that denied stay protection to the guarantors. (Ex. E of A.P. ECF No. 1, at 106-08.)

On August 30, 2012, the guarantors filed an adversary proceeding seeking the imposition of an automatic stay to stop Ozarks' collection efforts and asking that the Court enjoin Ozarks from taking any action in violation of that stay. (A.P. ECF No. 6, ¶ 5.) On December 4, 2012, while the adversary proceeding was still pending, the Superior Court entered a judgment finding the guarantors jointly and severally liable for the full amount on the Promissory Note. (Ex. A of A.P. ECF No. 6, at 6.) Before appealing the Superior Court's judgment, the guarantors tried to stop collection by requesting the bankruptcy court order an emergency stay under 11 U.S.C. § 105(a). I denied the motion. (Order Denying Plaintiffs' Emergency Motion, A.P. ECF No. 8.) Shortly thereafter, the guarantors voluntarily dismissed the adversary proceeding. (A.P. ECF Nos. 12-14.)

Since the Debtor defaulted in November of 2011, Ozarks has spent $100,037.50 on attorneys' fees and $2,448.20 in litigation expenses, totaling $102,485.70, to enforce its rights under the Promissory Note. (Ex. B of ECF No. 169, ¶ 15.) Ozarks' counsel has billed 404 hours of work in connection with collection from the Debtor and its guarantors. (Ex. B of ECF No. 169, ¶ 9.)

The table below provides a breakdown of these hours and expenses:

|  | Partner | | Associate | |
|---|---|---|---|---|
| Hourly Rate | $ | 250.00 | $ | 200.00 |
| Hours Billed | | 384.63 | | 19.4 |
| Hourly Fees | $ | 96,157.50 | $ | 3,880.00 |
| Total Hourly Fees | $ | 100,037.50 | | |
| Plus Expenses | $ | 2,448.20 | | |
| TOTAL FEES AND EXPENSES | $ | 102,485.70 | | |

(See, generally, Ex. B of ECF No. 169, at 68.)

At the hearing, Ozarks presented the expert testimony of Andrew J. Ekonomou, an attorney with considerable bankruptcy litigation expertise, in support of the reasonableness of its fee application. Mr. Ekonomou is an attorney licensed to practice law in Georgia. He received his law degree from Emory Law School in 1974. His principal practice is state and federal insolvency litigation. He has extensive experience as special litigation counsel to bankruptcy trustees in the Middle and Northern Districts of Georgia. After cross-examination by the Debtor's counsel, I accepted Mr. Ekonomou as an expert in the area of legal fees involving bankruptcy litigation.

Basing his opinion on Ozarks' fee application and the bankruptcy docket, Mr. Ekonomou testified that Ozarks' counsel's rate of $250.00/hour was relatively low in the prevailing market of Southern Georgia. He further testified that the rate and hours charged were reasonable in light of the litigation surrounding the case. The Debtor did not present evidence to contradict Mr. Ekonomou's testimony.

## CONCLUSIONS OF LAW

Section 506(b) of the Bankruptcy Code, which applies to oversecured creditors, provides that for "an allowed secured claim . . . there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or Statute under which such claim arose." 11 U.S.C. § 506. A secured creditor is entitled to add attorneys' fees to its secured claim only if: 1) the creditor is oversecured; 2) the fees are reasonable; and (3) the fees are provided for in the agreement or state statute under which the claim arose. See In re Amron Techs., Inc., 376 B.R. 49, 54 (Bankr. M.D. Ga. 2007).

The parties agree that Ozarks' claim of $1,148,386.22 is secured by the $1,375,000.00 value of Coastal Condos. (See Cl. # 6-1; ECF Nos. 100, 109, 121.) Therefore, Ozarks' claim is oversecured. See 11 U.S.C. § 506(a); Telfair v. First Union Mortg. Corp., 216 F.3d 1333, 1337 n.7 (11th Cir. 2000). Further, the parties also agree that attorneys' fees are provided for in the Loan Documents. (See ECF Nos. 169, 171.) However, the parties disagree regarding the amount of attorneys' fees included within the scope of the Loan Documents, as well as the extent to which any allowed attorneys' fees are secured.

## Welzel Analysis

This case is controlled by Welzel v. Advocate Realty Investments, LLC (In re Welzel), 275 F.3d 1308 (11th Cir. 2001) (en banc). In Welzel, the Eleventh Circuit adopted the bifurcation approach to determine the

extent to which an oversecured creditor's fully vested contractually liquidated attorneys' fees were entitled to secured status under 11 U.S.C. § 506(b). Id. at 1314-20. The Welzel court's description of this "bifurcation approach" is clear and broadly stated:

> Once the bankruptcy court determines that the fees are allowed under § 502, it should then analyze their reasonableness under § 506(b). Fees deemed reasonable constitute a secured claim, with the balance of unreasonable fees treated as an unsecured claim.

Id. at 1320. Allowance under § 502 is the "threshold issue" to be determined before the court bifurcates the allowed claim according to the federal § 506(b) "reasonableness" standard. See id. Since the language of § 506(b) "refers blanketly to 'reasonable fees,' without differentiation based on the time the fees vested," even attorneys' fees that have fully vested prepetition may be bifurcated in bankruptcy. See id. at 1340.

The Debtor's objections to Ozarks' Application align with the Welzel analysis. First, the Debtor contends that the majority of Ozarks' claim for attorney's fees should be disallowed under § 502(b)(1) because the Loan Documents are ambiguous on the issue of attorneys' fees, and Ozarks' demand for attorneys' fees failed to comply with O.C.G.A. § 13-1-11. Second, the Debtor argues that the contractually liquidated attorneys' fees are unreasonable under § 506(b) and, therefore, Ozarks' secured claim for reasonable attorneys' fees should not exceed $41,057.50—the amount incurred postpetition by the Debtor's counsel. (See Ex. 1 of ECF No. 171, at 10.)

### Amount Allowed Under § 502

Section 502(a) provides that a claim is deemed allowed unless a party in interest objects to the claim on one of the grounds established

AO 72A

(Rev. 8/82)

in § 502(b). See 11 U.S.C. § 502. Only § 502(b)(1) applies to this case. Section 502(b)(1) "disallows claims to the extent that such claim is unenforceable against the debtor and property of the debtor under applicable nonbankruptcy law." See Clark v. Wash. Mut. Home Loans (In re Clark), 299 B.R. 694, 700 (Bankr. S.D. Ga. 2003); see also Southeastern Bank v. McCarty (In re McCarty), No. 06-50998, 2007 WL 7023834 (Bankr. S.D. Ga. Sept. 21, 2007). "Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." See Butner v. United States, 440 U.S. 48, 55 (1979).

Here, Georgia law controls the rights and obligations of the Debtor and Ozarks under to the Loan Documents. "The construction of [a] contract for attorney's fees presents . . . a question of local law." TranSouth Fin. Corp. of Fla. v. Johnson, 931 F.2d 1505, 1507-08 (11th Cir. 1991) (quoting Sec. Mortg. Co. v. Powers, 278 U.S. 149, 154 (1928)). Section 13-1-11 of the Georgia Code governs the enforceability of obligations to pay attorneys' fees "upon any note or other evidence of indebtedness . . . ." See O.C.G.A. § 13-1-11(a).[9] When the note specifically provides for

---

[9] O.C.G.A. § 13-1-11. Attorney's fees in notes, etc., in addition to interest

    (a) Obligations to pay attorney's fees upon any note or other evidence of indebtedness, in addition to the rate of interest specified therein, shall be valid and enforceable and collectable as a part of such debt if such note or other evidence of indebtedness is collected by or through an attorney after maturity, subject to subsection (b) of this Code section and to the following provisions:

        (1) If such note or other evidence of indebtedness provides for attorney's fees in some specific percent of the principal and interest owing thereon, such provision and obligation shall be valid and enforceable up to but not in excess of 15 percent

liquidated attorneys' fees calculated at a fixed percentage of the debt, such fees are "enforceable up to but not in excess of 15 percent of the principal and interest owing on said note or other evidence of indebtedness," as long as the party seeking attorney's fees complies with the other requirements of the statute. O.C.G.A. § 13-1-11(a)(1); see Smith v. Khalif (In re Khalif), 308 B.R. 614, 622 (Bankr. N.D. Ga. 2004). A provision satisfies the statutory requirements of O.C.G.A. § 13-1-11 if:

> (1) the note's terms include an obligation to pay attorney fees; (2) the debt owed under the note has matured; (3) notice was given to the debtor informing him that if he pays the debt within ten days of the notice's receipt, he may avoid attorney fees; (4) the ten day period has expired without payment of the principal and interest in full; and (5) the debt is collected by or through an attorney.

In re Khalif, 308 B.R. at 622 (quoting Termnet Merch. Servs., Inc. v. Phillips, 588 S.E.2d 745, 747 (Ga. 2003)).

### Ambiguity in the Loan Documents

The Debtor and Ozarks agree that the Loan Documents provide for attorneys' fees. (See ECF Nos. 169, 171.) However, the Debtor maintains that the Loan Documents are inconsistent and ambiguous regarding the method by which attorneys' fee are to be calculated. The Debtor argues that this ambiguity should be construed against Ozarks as successor-in-interest to the original drafter. (ECF No. 171, ¶ 45.)

In support of this position, the Debtor states: "One loan document says reasonable, 2 loan documents say reasonable fees when in Bankruptcy

---

of the principal and interest owing on said note or other evidence of indebtedness . . . .

O.C.G.A. § 13-1-11

AO 72A
(Rev. 8/82)

Court, and only the Deed to Secure Debt mentions 15%." (ECF No. 171, ¶ 45.)

This statement is demonstrably false.[10] (See, generally, Ex. A of ECF No. 40.) The Promissory Note, the Security Deed, and the Assignment of Leases and Rents each specifically state that, in the event the debt is collected by an attorney after maturity, Ozarks is entitled to attorneys' fees of fifteen percent of the principal and interest then owed. (See Ex. A of ECF No. 40, at 44, 56, 66.) While the Commercial Security Agreement does not include liquidated attorneys' fees, it does provide that any proceeds from a foreclosure sale of Coastal Condos would first go to "Secured Party's expenses of enforcement, which includes reasonable attorneys' fees and legal expenses to the extent not prohibited by law." (Ex. A of ECF No. 40, at 51.) The Debtor argues that the omission of a fifteen percent attorneys' fee provision from the Commercial Security Agreement renders the Loan Documents as a whole ambiguous and inconsistent. (See ECF No. 171, ¶ 8.)

The Debtor's position makes sense only if one ignores the relationship between the Commercial Security Agreement and the other Loan Documents. The purpose of the Commercial Security Agreement is to "secure all sums advanced by Secured Party" under the terms of the Promissory Note. (Ex. A of ECF No. 40, at 50.) The Promissory Note specifically provides for fifteen percent attorneys' fees. (Ex. A of ECF No. 40, at 44.) So after the Debtor's default and the Secured Party's compliance with O.C.G.A. § 13-1-11, the fifteen percent of principal and interest

---

[10] Moreover, the Debtor actually quotes the Promissory Note's fifteen percent fee language in its response to the Application. (ECF No. 171, ¶ 4.)

16

due as attorneys' fees on the Promissory Note would vest and become part of the Secured Debt covered by the Commercial Security Agreement. (See Ex. A of ECF No. 40, at 50.)

Further support that the terms of the Promissory Note have been incorporated by reference is found in the Remedies section of the Commercial Security Agreement; subsection four provides that after the Debtor defaults, the Secured Party may "use any remedy allowed by state or federal law, or provided in any agreement evidencing or pertaining to the Secured Debts." (See Ex. A of ECF No. 40, at 51.) If the creditor is collecting on the debt through an attorney, this would include the right of the note holder to attorneys' fee of fifteen percent of the principal and interest owed. (See Ex. A of ECF No. 40, at 44.) Given the connection between the Promissory Note and the Commercial Security Agreement, the absence of an explicit fifteen percent liquidated fee provision does not create ambiguity in the Loan Documents.

The Debtor's second argument regarding the ambiguity of the Loan Documents is more persuasive. The Debtor submits that the Loan Documents are ambiguous because the Security Deed establishes two methods for calculating the amount due as attorneys' fees: 1) fifteen percent of principal and interest then owed and 2) reasonable attorneys' fees and costs incurred as awarded by any court exercising jurisdiction under the Bankruptcy Code.[11] (ECF No. 171, ¶¶ 40, 45.)

---

[11] Although not mentioned by Debtor's counsel, the Promissory Note also includes both methods of calculating liquidated attorneys' fees. (See Ex. A of ECF No. 40, at 45.)

AO 72A
(Rev. 8/82)

A claim for contractual attorneys' fees that does not comply with the notice requirements of O.C.G.A. § 13-1-11 is unenforceable under Georgia law and, therefore, disallowed under § 502(b)(1). See In re Clark, 299 B.R. at 700; First Georgia Bank v. FNB South (In re Moody), 277 B.R. 858, 863 (Bankr. S.D. Ga. 2001); Am. Express Travel Related Servs. Inc. v. Jawish (In re Jawish), 260 B.R. 564, 570 (Bankr. M.D. Ga. 2000); Dent v. Assocs. Fin. Serv. Of Am., Inc. (In re Dent), 137 B.R. 78, 81 (Bankr. S.D. Ga. 1992). If the oversecured creditor's right to attorneys' fees has not vested under state law, it follows they are not "provided for under the agreement or Statute under which such claim arose" as required for the allowance of attorneys' fees under § 506(b). See Fleet Card Servs., L.P. v. Kendrick (In re Kendrick), 314 B.R. 468, 473 (Bankr. N.D. Ga. 2004); In re Clark, 299 B.R. at 700.

This interpretation of §§ 502 and 506 is in keeping with the analysis outlined in Welzel:

> Language and structure thus demonstrate that §§ 502 and 506 should be read in tandem with one another, for they address complementary but different questions. Section 502 deals with the threshold question of whether a claim should be allowed or disallowed. Once the bankruptcy court determines that a claim is allowable, § 506 deals with the entirely different, more narrow question of whether certain types of claims should be considered secured or unsecured.

In re Welzel, 275 F.3d at 1318.

The combination of the established case law and the 10-day vesting period required by O.C.G.A. § 13-1-11(a)(3) allows debtors to minimize their contractual liability for attorneys' fees by filing for bankruptcy before the mandatory 10-day waiting period has expired. See First Bank of Georgia v. Lamb (In re Lamb), No. 11-11522, 2012 WL 1944527 (S.D. Ga. May

29, 2012) (debtor did not act in bad faith by filing for bankruptcy in response to § 13-1-11 letter when avoiding statutory attorneys' fees was not the sole factor in the debtor's decision); In re Sanjeev & Rajeev, Inc., 411 B.R. 480, 483 (Bankr. S.D. Ga. 2008); In re Jawish, 260 B.R. at 570; but see J.P. Morgan Chase Bank v. ELL 11, LLC, 414 B.R. 881, 886 (M.D. Ga. 2008) (holding oversecured creditor was entitled to attorneys' fees actually incurred after the filing of debtor's Chapter 11 petition regardless of its the failure to comply with notice requirements of O.C.G.A. § 13-1-11). Contractual language providing for the award of "reasonable attorneys' fees in bankruptcy" protects against this risk by clearly stating postpetition attorneys' fees are "provided for under the agreement or Statute under which such claim arose" even if the right to liquidated attorneys' fees has not vested at state law. See 11 U.S.C. § 506(b). When, as in this case, the liquidated attorneys' fees have fully vested prepetition, this provision may seem redundant but it is not ambiguous.

Even assuming that the fee provisions in the Loan Documents are ambiguous, construing such ambiguity against Ozarks would not have the effect proposed by the Debtor. The Debtor argues that construing the ambiguous fee provisions against Ozarks should invalidate the fifteen percent provisions and limit Ozarks' claim to "reasonable attorneys' fees." (See ECF No. 171, ¶ 40.) Debtor's counsel believes "reasonable attorneys' fees" should not exceed the attorneys' fees incurred by the Debtor during the same period. (See Ex. 1 of ECF No. 171, at 10.)

The Debtor's argument mistakenly applies the § 506(b) federal standard of reasonableness to the issue of claims allowance. (Ex. 3 of

19

ECF No. 171.) This is likely due to the Debtor's reliance on the Eleventh Circuit's first decision in Welzel v. Advocate Realty Investments, LLC, in which a panel of the Court concluded § 506(b) disallowed prepetition attorneys' fees to the extent such fees were deemed unreasonable. See In re Welzel, 245 F.3d 1283, 1285 (11th Cir. 2001). That decision was later vacated; it is not good law today. See Welzel v. Advocate Realty Invs., LLC (In re Welzel), 260 F.3d 1284 (11th Cir. 2001).

Following the vacated decision, the Debtor assumes that construing the contract language against Ozarks would have the effect of replacing the fifteen percent language with "reasonable fees awarded in bankruptcy," thereby disallowing Ozarks' claim for attorneys' fees to the extent such fees are not reasonable under § 506(b). See In re Welzel, 245 F.3d 1283 op. vacated and superseded, 255 F.3d 1266 (11th Cir. 2001) reh'g en banc granted, op. vacated, 260 F.3d 1284 (11th Cir. 2001) and on reh'g en banc, 275 F.3d 1308 (11th Cir. 2001).

However, § 506(b) is not a disallowance provision; rather, it "merely provides the basis for determining a nonbankruptcy law created obligation . . . is allowable as part of a secured or unsecured claim in the bankruptcy case." In re Clark, 299 B.R. at 700. Claims are disallowed under 11 U.S.C. § 502(b). See id. Thus, the federal reasonableness standard of § 506(b) is not a basis for disallowance under § 502. See In re Welzel, 275 F.3d at 1316-18.

Therefore, the correct issue is not to what extent attorneys' fees are reasonable under § 506(b), but rather to what extent would Ozarks attorneys' fees be disallowed under § 502(b)(1) and Georgia law if the contract were construed to allow only "reasonable attorneys' fees." See

Trauner v. State Bank and Trust Co., (In re Solid Rock Dev. Corp., Inc.), 481 B.R. 221, 230 (Bankr. N.D. Ga. 2012) ("The only portion of [Welzel and Section 506(b)] that 'preempts' state law is the allowability of the statutory fees to an oversecured creditor as part of its secured claim in the bankruptcy case."). In this hypothetical, the meaning of the "reasonable attorneys' fees" provisions would be determined by § 13-1-11(a)(2), which governs the award of contractual attorneys' fees when the contract does not specify a specific percentage. Section 13-1-11(a)(2) specifically provides that "such provision shall be construed to mean 15 percent of the first $500.00 of principal and interest owing on such note or other evidence of indebtedness and 10 percent of the amount of principal and interest owing thereon in excess of $500.00." Accordingly, even assuming the Loan Documents could be construed to provide only "reasonable attorneys' fees," Ozarks would have an allowed claim of $114,863.62.

Finally, simply as a matter of basic contract interpretation, construing any "ambiguity" regarding attorneys' fee against Ozarks would not invalidate the fifteen percent fee provisions. Since a limited or specific provision will prevail over one that is more broadly inclusive, the specific calculation of "15% of the principal and interest owed" would control over the more general "reasonable fees" provision. See Cmty. Marketplace Props., LLC v. SunTrust Bank, 693 S.E.2d 602, 605 (Ga. Ct. App. 2010); Davenport v. Nance, 390 S.E.2d 281, 282 (Ga. Ct. App. 1990).

AO 72A
(Rev. 8/82)

### Compliance with the Notice Requirements of O.C.G.A. § 13-1-11(a)(3)

The Debtor next argues that Ozarks' right to attorneys' fees did not vest prepetition because the demand letter failed to comply with the notice requirements of O.C.G.A. § 13-1-11(a)(3). (See ECF No. 171, ¶¶ 17, 43.) Section 13-1-11(a)(3) requires the party seeking payment of contractual attorneys' fees first issue a demand notice: 1) in writing; 2) to the obligated party; 3) after maturity; 4) stating that the contractual attorneys' fees provisions will be enforced in addition to principal and interest; and 5) stating that the party has 10 days from the receipt of such notice to pay the principal and interest without the attorney fees. See O.C.G.A. § 13-1-11(a)(3); Trust Assocs. v. Snead, 559 S.E.2d 502, 504 (Ga. Ct. App. 2002). Ozarks' demand letter was sent on December 21, 2011, and states as follows:

> By this letter, Ozarks hereby provides written notice of Coastal's default. Ozarks further accelerates the balance due under the Promissory Note as of the date of this letter, that is, $1,085,486.61 and demands payment pursuant to O.C.G.A. § 13-1-11 and O.C.G.A. § 13-6-11. In the event payment in full is not received within ten (10) days of receipt of this letter, Ozarks will seek to recover all attorneys' fees incurred in the collection of this debt as provided in the loan documents.

(Ex. A of ECF No. 40, at 74-75.)

The Debtor maintains the notice provided in the demand letter does not comply with § 13-11-1(a)(3) on the grounds that: 1) the demand letter was never received by the corporation; 2) the certified receipt of the demand letter was not signed by an authorized agent of the corporation; 3) the demand letter incorrectly stated the amount due as principal and interest; and 4) the demand letter did not reference the percentage of

AO 72A
(Rev. 8/82)

principal and interest sought as attorneys' fees. (See ECF No. 171, ¶¶ 17, 43.)

The Debtor's objections are without merit. The Debtor has submitted no evidence or testimony to support its first two objections. Moreover, the Debtor has previously admitted to receiving the demand letter. Paragraph seven of the Debtor's Amended Response to Bank of the Ozarks' Objection to Debtor's Chapter 11 Plan of Reorganization provides: "Debtor admits receiving the Demand Letter on December, 2011. Debtor further states the document speaks for itself . . . ." (ECF No. 158, ¶ 7.)

As to the Debtor's third and fourth objections, Georgia law requires only substantial compliance with § 13-1-11(a)(3): "So long as a debtor is informed that he has 10 days from receipt of notice within which to pay principal and interest without incurring any liability for attorney fees[,] the legislative intent . . . has been fulfilled." Gen. Elec. Cred. v. Brooks, 249 S.E.2d 596, 602 (Ga. 1978) (interpreting the identical language of § 13-1-11's predecessor statute); Textile Rubber & Chem. Co., Inc. v. Thermo-Flex Techs., Inc., 706 S.E.2d 728, 734 (Ga. Ct. App. 2011).

The demand letter specifically stated the Debtor had ten days to pay the principal and interest due on the note, or else "Ozarks will seek to recover all attorneys' fees incurred in the collection of this debt as provided in the loan documents." (Ex. A of ECF No. 40, at 74-75.) Having thus substantially complied with O.C.G.A. § 13-1-11(a)(3), the letter's error in the amount demanded on the note or failure to mention the specific method of calculating attorneys' fees does not render the notice insufficient. See Brzowski v. Quantum Nat. Bank, 717 S.E.2d 290, 295 (Ga. Ct. App. 2011) ("There is no specific requirement that the creditor cite

AO 72A
(Rev. 8/82)

to the specific statute or quote the exact language from the instrument relating to attorneys' fees."). Accordingly, I find that Ozarks' demand letter complied with the notice requirements of O.C.G.A. § 13-1-11(a)(3).

### Application of § 13-1-11(b)

Finally, the Debtor challenges the fifteen percent attorneys' fees under O.C.G.A. § 13-1-11(b).[12] (See ECF No. 171, ¶ 42.) That section entitles an obligor to petition the court for a reasonableness determination if the fees at issue are calculated based on a percentage of the indebtedness and that calculation yields an amount above $20,000.00. See O.C.G.A. § 13-1-11(b)(1)-(3).

However, this provision of the statute did not go into effect until July 1, 2011. See Renasant Bank, Inc. v. Earth Res. of Franklin Cnty., LLC, No. 3:11-cv-143-CDL, 2013 WL 1993673, *4 (M.D. Ga. May 13, 2013) aff'd, 537 F. App'x 889 (11th Cir. 2013). The most recent of the Loan

---

[12] O.C.G.A. § 13-1-11(b)(1)-(3) provides:

(b)(1) If, in a civil action, application of the provisions of paragraph (2) of subsection (a) of this Code section will result in an award of attorney's fees in an amount greater than $20,000.00, the party required to pay such fees may, prior to the entry of judgment, petition the court seeking a determination as to the reasonableness of such attorney's fees.

(2) In response to a petition filed under paragraph (1) of this subsection, the party requesting the attorney's fees shall submit an affidavit to the court with evidence of attorney's fees, and the party required to pay such fees may respond to such affidavit.

(3) The court may hold a hearing to decide the matter of attorney's fees or may award attorney's fees based on the written evidence submitted to the court. The amount of attorney's fees awarded shall be an amount found by the court to be reasonable and necessary for asserting the rights of the party requesting attorney's fees.

Documents—the Modification Agreement—was executed on April 25, 2011, more than two months before section (b) went into effect. Since there is no reason to believe the amendment was intended to be applied retroactively, the Debtor is not entitled to a state-law reasonableness determination. See Wells Fargo Bank, N.A. v. SFPD II, LLC, No. 1:11-cv-4001-JEC, 2013 WL 541410, *7 n.8 (N.D. Ga. Feb. 12, 2013) (citing 2012 Ga. Laws 725 to demonstrate that § 13-1-11(b) "only applies to contracts entered on or after July 1, 2011").

Having considered the Loan Documents as a whole, I find that the attorneys' fees provisions are not ambiguous. In the event of default, the Loan Documents clearly entitle Ozarks to liquidated attorneys' fees of fifteen percent of the principal and interest owed. Moreover, Ozarks' rights were properly perfected pursuant to O.C.G.A. § 13-1-11. Accordingly, the amount due as attorneys' fees under the Loan Documents is $178,768.93.

### Reasonable Fees Under § 506(b)

Section 506(b) determines the extent to which Ozarks' allowed claim for attorneys' fees of $178,768.93 qualifies as reasonable; reasonable fees are secured to the extent the value of collateral exceeds the amount of the underlying claim, while unreasonable fees are treated as unsecured claims. See In re Welzel, 275 F.3d at 1318-20. Bankruptcy courts in the Eleventh Circuit apply the "lodestar analysis" to determine the reasonableness of an oversecured creditor's attorneys' fees. See Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); Grant v. George Schumann Tire & Battery Co., 908 F.2d 874, 877 (11th Cir. 1990). Reasonable fees are the

AO 72A

(Rev. 8/82)

product of the nature and extent of services rendered (in hours), multiplied by the value of those services (by hourly rate), and adjusted according to the factors laid out in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974).[13] See Grant, 908 F.2d at 877; In re Reorganized Lake Diamond Assocs., LLC, 367 B.R. 858, 875 (Bankr. M.D. Fla. 2007); Curtis v. Pilgrim Health and Life Ins. Co. (In re Curtis), 83 B.R. 853, 861 (Bankr. S.D. Ga. 1988).

The reasonableness factors considered under Johnson include: (i) time and labor expended; (ii) novelty and difficulty of the questions raised; (iii) skill required to properly perform the legal services rendered; (iv) attorney's opportunity cost in pursuing the matter; (v) customary fee for like work; (vi) whether the fee is fixed or contingent; (vii) time limitations imposed by the client or circumstances; (viii) amount in controversy and the results obtained; (ix) experience, reputation, and ability of the attorney; (x) undesirability of the case within the legal community in which the case arose; (xi) nature and length of the professional relationship between attorney and client; and (xii) attorney's fee awards in similar cases. See Johnson, 488 F.2d at 717-19.

The Debtor does not dispute the reasonableness of Ozarks' counsel's hourly rate. The only real issue is the reasonableness of the hours Ozarks' attorneys spent on the collection of the debt and the protection of its claim in bankruptcy. The reasonable amount of time expended in a

---

[13] Fifth Circuit decisions issued before the close of business on October 1, 1981, constitute binding precedent for this Court. See Bonner v. City of Prichard, 661 F.2d 1206, 1210 (11th Cir. 1981).

given case is determined in light of the commercial context in which the litigation occurred:

> Reasonable fees are those necessary for the collection and protection of a creditor's claim and include fees for those actions which a similarly situated creditor might have taken. The fees must be cost justified by the economics of the situation and necessary to preserve the creditor's interest in light of the legal issues involved.

In re NuMed Home Health Care, Inc., 310 B.R. 226, 236 (Bankr. M.D. Fla. 2004) (quoting In re Digital Prods. Corp., 215 B.R. 478, 482 (Bankr. S.D. Fla. 1997)).

From November 2011 to August 2013, Ozarks' counsel billed 404 hours in connection with collection of the debt owed by the Debtor and its guarantors. (See Ex. B of ECF No. 169, ¶ 9.) At the reasonableness hearing, Ozarks' expert witness testified that the amount of hours expended in this case was reasonable in light of the twelve Johnson factors. Particularly important to Mr. Ekonomou's opinion was the fact that, as in many single asset real estate cases, very little in this case has been accomplished by consent of the parties. The Debtor did not present testimony or evidence to contradict this opinion. Instead, the Debtor merely suggests that the hours deemed reasonable should not exceed the hours the Debtor's counsel billed during the same period. (Ex. 1 of ECF No. 171, at 10.) I can see no reason why this should be the case.

This case has been heavily litigated and—at roughly ten percent of the principal—the fees incurred are a substantial percentage of the debt owed. However, these facts alone do not warrant the conclusion that a similarly situated creditor would not have exercised its rights similarly. See In re Sundale, Ltd., 483 B.R. 23, 29 (Bankr. S.D. Fla. 2012) (approving

$3.2 million in actual fees incurred to protect a secured claim of $6.3 million when the debtor was largely responsible for the escalation in litigation).

The Debtor does not contend that Ozarks' fees were incurred for any reason other than the protection of its interest in Coastal Condos and the collection of the underlying debt. (See Ex. 1 of ECF No. 171.) In fact, the only class of fees the Debtor specifically identifies as unrelated to collection of Ozarks' claim are: "Attorney fee time spent on the Superior Court Case once the Chapter 11 Bankruptcy Case was filed and a Stay was entered in the Superior Court case as to Coastal (May 21, 2012) OR Time Spent on Adversary filed by the Guarantors." (Ex. 1 to ECF No. 171, at 2-4) (capitalization in original.) The Debtor maintains that since the Debtor was not a party to these proceedings, the $15,000.00 in associated fees and costs cannot be satisfied out of equity that would otherwise be property of the estate. (See ECF No 171, ¶ 48.)

I find the Debtor's argument unpersuasive. The fees incurred in connection with collection on the Guaranty Agreements were reasonable and necessary to protect Ozarks' rights outside the bankruptcy forum. See In re Mkt. Ctr. E. Retail Prop., Inc., 433 B.R. 335, 373 (Bankr. D. N.M. 2010). Although sufficient to provide adequate protection in bankruptcy, the roughly $200,000.00 equity cushion in Coastal Condos may not have been enough protection to address a commercially reasonable assessment of the risk of nonpayment. See In re Cummins Util., L.P., 279 B.R. 195, 205 (Bankr. N.D. Tex. 2002). In light of the risks posed by the Debtor's bankruptcy, enforcing the Guaranty Agreements in state Superior Court was a reasonable step to ensure Ozarks' full recovery on its claim. See In re

Mkt. Ctr. E. Retail Prop., Inc., 433 B.R. at 372-73; Hepner v. PWP Golden Eagle Tree, LLC (In re K & J Props., Inc.), 338 B.R. 450, 456 (Bankr. D. Colo. 2005) (fees incurred in creditor's suit against guarantors, while unnecessary in hindsight, were reasonable under the circumstance). Likewise, attorneys' fees incurred in defending against the guarantors' attempts to block Ozarks' collection through the adversary proceeding and the state-court appeal were also reasonable. See In re Cummins Util., L.P., 279 B.R. at 205. The guarantors' success in either proceeding would have foreclosed recovery under the Guaranty Agreements and significantly reduced Ozarks' ability to fully recover its claim. See In re Mkt. Ctr. E. Retail Prop., Inc., 433 B.R. at 370.

While Ozarks' counsel has represented the interests of its client both comprehensively and aggressively, there is no reason to believe these efforts have been overzealous or economically unjustified. See In re Reorganized Lake Diamond Assocs., LLC, 367 B.R. at 876-77 (denying attorneys' fees and costs incurred in connection with oversecured creditor's postpetition purchase of its secured claim and subsequent attempts to acquire the debtor).

However, Ozarks allowed claim of $178,768.93 is not entirely reasonable. Implicit in the lodestar analysis is the requirement that reasonable attorneys' fees be actually incurred. See In re Solid Rock Dev. Corp., Inc., 481 B.R. at 231; In re Amron Techs., Inc., 376 B.R. at 54; Wayland v. Kap Title, Inc. (In re Wayland), No. 06-74203, 2007 WL 7140211, *1 (Bankr. N.D. Ga. Feb. 27, 2007). It is undisputed that Ozarks has actually incurred only $102,485.70 in fees and costs in its efforts to collect on the Promissory Note. Therefore, the $76,382.23 difference

between Ozarks' allowed claim for attorneys' fees and its actual attorneys' fees is unreasonable and, therefore, unsecured.

After reviewing the Application, its supporting documents, and the entire record of the case, I find the time Ozarks expended in connection with collection of the debt and the protection of its claim are reasonable under 11 U.S.C. § 506(b); its attorneys' fees of $100,037.50 are secured. Furthermore, I find the $2,448.20 in costs and expenses are also reasonable under the circumstances. Accordingly, Ozarks is entitled to $102,485.70 as part of its allowed secured claim.

AO 72A
(Rev. 8/82)

**ORDER**

Based on the foregoing Findings of Fact and Conclusions of Law, Ozarks' Application for Expenses Authorized by 11 U.S.C. § 506(b) is **ORDERED GRANTED** in part and **DENIED** in part. The Debtor is indebted to Ozarks in the amount of $1,451,382.23. The addition of postpetition interest and reasonable fees to Ozarks allowed secured claim has completely consumed the Debtor's equity in Coastal Condos. Ozarks is entitled to a secured claim of $1,375,000.00, which constitutes liquidated principal in the amount of $1,048,883.32, accrued interest in the amount of $179,164.49[14], late fees in the amount of $10,934.50, reimbursement for property taxes paid by Ozarks in the total amount of $29,231.99, appraisal fees incurred by Ozarks in the amount of $4,300.00, and reasonable attorneys' fees and court costs of $102,485.70. The balance of Ozarks contractual attorneys' fees is an unsecured claim of $76,382.23.

_____
JOHN S. DALIS
United States Bankruptcy Judge

Dated at Brunswick, Georgia,
this _10th_ day of March, 2014.

---

[14] Prepetition interest of $55,036.41 together with postpetition interest accruing at the rate of $189.38 per day until the remaining equity was consumed totaling $124,128.08.

AO 72A
(Rev. 8/82)